UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRODIGY FINANCE CM2021-2 DAC,

Petitioner,

– *against* –

TERRA STEPHANIE BOTROS,

Respondent.

**OPINION & ORDER**

1:25-cv-7818 (ER)

RAMOS, D.J.:

Prodigy Finance CM2021-2 DAC ("Prodigy") petitions the Court to confirm an arbitration award against Terra Stephanie Botros ("Botros") pursuant to 9 U.S.C. § 207 of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Prodigy also petitions the Court for attorney's fees and costs incurred in connection with the instant motion and for post-judgment interest pursuant to 28 U.S.C. § 1961(a). For the reasons stated below, the motion is GRANTED.

# I. BACKGROUND

## A. Factual Background.

Prodigy is a company incorporated under the laws of Ireland. Doc. 12 ¶ 1. Prodigy Finance Limited is a company which administers, manages, and services loans held by Prodigy. *Id.* ¶ 1 n.1. Botros is a Canadian national who, at the time this petition was filed, was last known to be residing in Manhattan to attend New York University's dental school. Doc. 12 ¶¶ 2, 4; *see also* Doc. 4-5, Page 10 (Botros states that she is "still a student [at NYU's dental school] until 2026 May."). In addition, when the petition was served at her Manhattan address, her doorman confirmed she still lived at that address. Doc. 7.

On August 3, 2022, Prodigy's predecessor-in-interest ("Prodigy Finance Limited") entered into a loan agreement (the "Loan Agreement") with Botros. Doc. 1 ¶ 8. Pursuant to the Loan Agreement, Prodigy Finance Limited loaned Botros $31,193 and charged her

an administration fee of $1,559.65. Doc. 4-2, Page 2. The "rate of interest" on the loan was "12.74% per annum simple variable," but was subject to change. Doc. 4-2, Pages 3–4. On August 5, 2022, pursuant to Clause 9.2 of the Loan Agreement, Prodigy Finance Limited assigned its rights under the Loan Agreement to Prodigy. Doc. 1 ¶¶ 9, 10.

The Loan Agreement contains four clauses which are relevant to this case. First, Clause 5.1 provides that Prodigy may "terminate" the Loan Agreement and "call in the full [b]alance" if Botros "do[es] not make a repayment in accordance with the terms of" the Loan Agreement. Doc 4-2, Page 13. Second, Clause 10.1 establishes that the Loan Agreement is "governed by English law." Doc 4-2, Page 15. Third, Clause 10.4 provides that disputes regarding amounts between £5,000.00 and £200,000.00 (or the foreign currency equivalent) "shall be referred to the Chartered Institute of Arbitrators ('CIArb')" for resolution. Doc. 4-2, Page 16. Fourth, Clause 10.5 provides that "[t]he arbitration award shall be final and binding on the parties." Doc. 4-2, Page 16.

Botros did not make any loan payments. *See* Doc. 4-4. Prodigy emailed Botros in an effort to obtain late payments, but those efforts were unsuccessful. *See* Doc. 4-5. On June 14, 2024, after multiple failed attempts to collect on the debt, Prodigy sent Botros a notice that she was in default and that Prodigy may terminate her agreement if the proper payments were not made. Doc. 4-8. On July 12, 2024, after receiving no further payments, Prodigy terminated the Loan Agreement. Doc. 4-9. The termination notice stated that the loan's "full outstanding balance" of "$42,140.67" was "now immediately due and payable." *Id.* at Page 2. Additionally, the termination notice stated that interest would continue to accrue and that Prodigy may "invoke the provisions for arbitration under the Loan Agreement, without further notice." *Id.*

On January 16, 2025, Prodigy applied to initiate arbitration proceedings in the CIArb to enforce the Loan Agreement. Doc. 4-10. Prodigy sought the $42,658.90 principal balance at the time of application, various interest payments, and costs incurred in connection with litigating the arbitration. Doc. 4-10, Page 3; *see also* Doc 4-1 ¶¶ 7.4.1–

7.4.5. The arbitration proceeding formally commenced on January 24, 2025. Doc. 4-1 ¶ 4.2. Botros did not participate in the arbitration proceeding. Doc. 4-1 ¶ 2.6.

On February 27, 2025, the arbitrator found in Prodigy's favor and ordered the Final Award as follows:

1. "[Botros] shall pay [Prodigy] the total sum outstanding under the Loan Agreement as at the date of this Award, being the sum of $42,658.90.
2. [Botros] shall pay [Prodigy] simple interest of 15.86% on the sum of $42,658.90 from 12 July 2024 to the date of this Award, namely 27 February 2025, in the sum of $4,281.85.
3. [Botros] shall pay [Prodigy] interest accruing on a simple basis at a daily rate of $18.54 until the date of actual repayment.
4. [Botros] shall pay [Prodigy] costs in the sum of £1,000.00.
5. [Botros] shall pay [Prodigy] fixed costs in the sum of £3,000.00."

*Id.* ¶¶ 10.1.1–10.1.6. Prodigy asserts that Botros has not paid any of the Final Award. Doc. 12-1 ¶ 7.

**B. Procedural History.**

Prodigy petitioned the Court to confirm the arbitration award against Botros on September 19, 2025. Doc. 1. The petition is unopposed because Botros has not filed any document in this case. Botros was served on September 27, 2025, and her Answer was due twenty-one days thereafter. Doc. 7. To date, Botros has not answered the petition. On November 3, 2025, Prodigy wrote the Court to request that the petition be deemed an unopposed motion for summary judgment, Doc. 8, and the Court granted this request, Doc. 9. On November 26, 2025, Prodigy submitted their Memorandum of Law in support of confirming the arbitration award, Doc. 11, Rule 56.1 Statement of Material Facts, Doc. 12, and Proposed Order in favor of confirming the arbitration award, Doc 13. Prodigy also submitted an invoice from the law firm Venable LLP, requesting $9,155.00 in attorney's fees and costs incurred in connection with this case. Doc. 12-3. In its Proposed Order, Prodigy also moves to apply post-judgment interest pursuant to 28 U.S.C. § 1961(a). Doc 13.

## II. LEGAL STANDARD

### A. Enforcement of Arbitral Awards.

Arbitral awards are not self-enforcing and must therefore be "given force and effect by being converted to judicial orders by courts." *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). The New York Convention, codified at Chapter 2 of the Federal Arbitration Act, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature. 9 U.S.C. § 202; *see also Navig8 Chemicals Asia PTE., Ltd. v. Crest Energy Partners, LP*, No. 15 Civ. 7639 (PAE), 2015 WL 7302267, at *2–3 (S.D.N.Y. Nov. 18, 2015). The Second Circuit has interpreted this provision to mean that the New York Convention applies to arbitration agreements that "involv[e] parties domiciled or having their principal place of business outside [the United States]." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (internal quotation marks and citation omitted). Because Prodigy Finance is an Irish corporation, the New York Convention applies.

"When a party seeks confirmation of an arbitral award under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Albtelecom SH.A v. UNIFI Communications, Inc.*, No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017) (quoting 9 U.S.C. § 207). "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *see also CBF Industria de Gusa S/A v. AMCI Holdings,*

*Inc.*, 850 F.3d 58, 76–77 (2d Cir. 2017), *cert. denied*, 583 U.S. 1039 (2017). These grounds are:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . .; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made.

Convention art. V(1). Enforcement may also be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought. Convention art. V(2).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corporation*, 103 F.3d 9, 12 (2d Cir. 1997) (internal punctuation and quotation marks omitted) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)). The arbitrator need not explain the rationale for the award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). In short, as long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award — even if it disagrees with it on the merits. *Landy*

*Michaels Realty Corp. v. Local 32B-32J, Service Employees International Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks and citation omitted).

**B. Summary Judgment Standard.**

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Trustees for the Mason Tenders District Council Welfare Fund v. Earth Construction Corp.*, No. 15 Civ. 3967 (RA), 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) (internal quotation marks and citation omitted) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on the record"). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

Even if a motion for summary judgment is unopposed, courts are required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 BEARGRAM Company*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan American Life Insurance Company*, 12 F.3d 410, 416 (4th Cir. 1993)). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v.*

*Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## III. DISCUSSION

### A. The Arbitration Award Is Confirmed.

The Court has conducted a limited review of the arbitration agreement entered into by the parties and the ensuing arbitration award.

First, the Court will address whether the arbitrator had a barely colorable justification for concluding that the notice requirements of Convention article V(1)(b) were met. Initially, the arbitrator noted that he "informed the Parties of the appointment of the Arbitrator" and "contacted the Parties by email and afforded the Respondent [an opportunity] to file a Reply." Doc. 4-1 ¶¶ 4.4, 4.5. The arbitrator used the contact information which Botros provided in the Loan Agreement to provide her with notice of the proceedings. *Compare* Doc. 4-1 ¶ 2.5 *with* Doc. 4-2, Page 2. Botros did not respond. Doc. 4-1 ¶ 4.6. Pursuant to the Loan Agreement, Botros was required to inform Prodigy if her contact information changed. Doc. 4-2, Page 9. The Court has received no indication that Botros' contact information has changed from what she initially provided in the Loan Agreement. Therefore, the arbitrator sufficiently justified the conclusion that Botros was given proper notice of the arbitration proceedings. So Convention article V(1)(b) is not a bar to confirmation.

Second, the Court will evaluate whether the arbitrator had a barely colorable justification for evaluating the merits. In evaluating the merits, the arbitrator correctly recognized that Clause 5.1 of the Loan Agreement permitted Prodigy to terminate the Loan Agreement and "call in the full balance" if Botros did not make payments under the terms of the Loan Agreement. Doc. 4-1 ¶ 8.7. After considering Prodigy's submissions, the arbitrator found that Botros "repeated[ly] breache[d]" her payment obligations under the Loan Agreement because she sent "[n]o payments" after receiving the loan. Doc. 4-1 ¶ 8.3. This finding is confirmed by Botros' transaction history with Prodigy, which shows

zero payments made from the date the loan was issued to January 7, 2025. *See* Doc. 4-4. The arbitrator subsequently found that Prodigy complied with applicable contractual requirements and statutory obligations under English law when putting Botros on notice that she breached the contract, was in default, and that Prodigy would be terminating the Loan Agreement to activate Clause 5.1. *See* Doc. 4-1 ¶¶ 8.6, 8.7.1, 8.8.4, 8.8.6, 8.9, 8.10. Consequently, the arbitrator found that Prodigy was contractually "entitled to be paid the sum [of] $42,658.90" by Botros. Doc. 4-1 ¶ 8.12. Given the arbitrator's extensive consideration of Prodigy's submissions and the applicable law, the Court holds that the arbitrator's decision here easily meets the "barely colorable justification" standard. *Landy*, 954 F.2d at 797.

Pursuant to the Loan Agreement, the arbitrator then found that Prodigy was entitled to claim interest accruing on a simple basis at the contractual rate of 15.86%. Doc. 4-1 ¶ 8.16. With this rate, the arbitrator calculated that from July 12, 2024 to February 27, 2025, Botros owed $4,281.85 in interest. Doc. 4-1 ¶ 10.1.2. Separately, from the date after the final award was issued to the present date, the arbitrator found that the 15.86% annual interest rate required Botros to pay daily interest payments of "$18.54 until the date of actual repayment." Doc. 4-1 ¶ 10.1.3.

Finally, the arbitrator found that, pursuant to English law and CIArb rules, Prodigy was entitled to $5,051.20[1] from Botros to recover its costs incurred in connection with the arbitration. Doc. 4-1 ¶¶ 9.3, 9.5.

[1] The Final Award determined that Prodigy was entitled to recover £4,000 in costs and expenses. Doc 4-1 ¶ 9.3, 9.5. The Court has converted this amount to $5,051.20 USD. For the conversion methodology, see Doc. 12 ¶ 14, n.2 ("The award for the fees and costs associated with the arbitration was made in GBP (£), in the amount of £1,000 for fees and costs and £3,000 for the Chartered Institute of Arbitrators' fixed fee. . . The exchange rate for GBP in effect on February 27, 2025 was 1.2628. Accordingly, £4,000 GBP [converts to] $5,051.20 USD." See Foreign Exchange Rates, Fed. Reserve, https://www.federalreserve.gov/releases/h10/20250303/ (last visited September 8, 2025). See, e.g., G.E. Transport S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 139–40 (D.D.C. 2010) (adopting Restatement approach and converting portion of arbitral award that was stated in Euros into dollars and using exchange rate in effect when the final arbitration award was made)).

There is no indication that the above-described conclusions were made arbitrarily, that that they exceeded the arbitrator's jurisdiction under the agreement, or that they were contrary to law. *See Trustees of the New York City District Council of Carpenters Pension Fund v. Dejil Systems*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party."). Accordingly, the Court finds that based on the record provided, together with the appropriate narrow level of review, there is no disputed material issue of fact, and the arbitration award should be confirmed. *See Landy*, 954 F.2d at 797 ("[A]n arbitration award should be enforced . . . if there is 'a barely colorable justification for the outcome reached.'" (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978))).

**B. Attorney's Fees, Costs, and Post-Judgment Interest Should Be Granted.**

Petitioner also seeks to recover an award of attorney's fees and costs for the instant motion to confirm, as well as post-judgment interest.

The Court agrees that the award of attorney's fees in connection with this motion is merited. "[C]ourts have routinely awarded attorney[']s fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Trustees of the New York City District Council of Carpenters Pension Fund v. Alliance Workroom Corporation*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting *Abondolo v. H. & M. S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases)). Here, Botros failed to abide by the arbitration award and failed to participate in this action. Consequently, Prodigy seeks $9,155.00 in attorney's fees and costs. Doc. 13, Page 1. Prodigy has provided attorney's invoices supporting this amount. Doc. 12-3, Page 4. Since the amount has been established without opposition from Botros, the Court grants the request.

As to post-judgment interest, the Court grants post-judgment interest on the full judgment amount pursuant to 28 U.S.C. § 1961(a). *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). As of the date this judgment is entered, this judgment's post-judgment interest shall replace any post-award interest rate set by the Final Award. *Carte Blanche (Singapore) Pte., Ltd v. Carte Blanche International, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989) (held that §1961(a)'s statutory rate of post-judgment interest governs judgments confirming arbitration awards, "even [when] arbitrators. . . establish[] a different rate of post-judgment interest").

## IV. CONCLUSION

For the reasons stated above, the petitioners' motion is GRANTED in full. The arbitration award is confirmed, and the Clerk of the Court is directed to enter judgment in favor of the petitioners pursuant to the arbitrator's final award. This judgment shall accrue post-judgment interest as mandated in 28 U.S.C. § 1961. The petitioner is also awarded $9,155.00 in attorney's fees and costs.

It is SO ORDERED.

Dated: October 22, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.